### THE JOHN T. PRATT.

### THE A. R. KEENE.

### NATIONAL STORAGE CO. v. THE JOHN T. PRATT et al.

### ROGERS v. THE JOHN T. PRATT.

#### (District Court, S. D. New York. March 24, 1894.)

COLLISION—STEAM AND SAIL MEETING—FAULTY LOOKOUT—CHANGE OF COURSE.
 A tug, going down New York bay at night, incumbered with scows in tow on a hawser, saw ahead the lights of a sailing vessel, and took measures to avoid her by blowing one whistle and sheering to the right, after which she continued her original course. Owing to a faulty lookout on the schooner, the latter changed her course when near the tow, either by reason of taking in sails preparatory to anchoring, or by an intentional change of course towards her anchorage ground, and ran in between the tug and the tow. and collided with one of the scows. *Held*, that the sole liability was with the schooner, for negligent lookout and unwarranted change of course when approaching a steam vessel.

Goodrich, Deady & Goodrich, for National Storage Co.
Stewart & Macklin, for the John T. Pratt.
Wing, Shoudy & Putnam, for the A. R. Keene.

BROWN, District Judge. At about 10 o'clock in the evening of July 13, 1893, as the steam tug Pratt was hauling three mud scows out to sea by a hawser from 40 to 50 fathoms in length, the schooner Keene, coming up the bay, with a moderate southwest wind, came in collision with the forward scow, by which both were badly damaged, to recover for which, the above libels were filed.

The collision was about one-third of the distance from Bedloe's Island to Robin's Reef. The night was mild and clear starlight. The tug and the schooner being at first nearly head and head, and the colored lights of each being visible to the other, the tug, when at a considerable distance, gave a signal of one whistle, indicating that she would go to the right, ported her wheel, hauled off to the right for a few minutes, and then continued down on her course. The schooner was intending to anchor upon the anchorage ground off and below the Statue of Liberty. Before the collision, her topsails, jibs, spanker, and foresail were all taken in; and the concurrent testimony is that she struck the forward end of the scow at a considerable angle, having run in between the forward part of the scow and the tug, after having passed the tug at a considerable distance to the eastward of her.

The clear preponderance of evidence and probability satisfies me

that the whole fault of this collision was with the schooner, in that she did not maintain a proper lookout; did not observe the vertical lights of the tug, indicating a tow, nor the lights upon each of the scows; nor did she observe the scows themselves, which were easily distinguishable at a sufficient distance; and that she changed her course towards her anchorage ground, and ran in between the tug and tow in consequence of her failure to keep a proper lookout. The crew had been taking in sail preparatory to anchoring, and this might naturally account for some relaxation in the lookout. The change of course might have taken place without much change of her helm, in consequence of having taken in her jibs, and foresail, the last only very shortly before the collision, leaving her mainsail still drawing on the starboard side, and tending to bring her bow to port. But it is immaterial whether her change of course happened negligently from this cause, or from an intentional change of helm, which her witnesses deny.

The faults alleged against the Pratt I find to be immaterial. Her vertical lights must have come, as I find, sufficiently in view of the schooner in abundant time to warn the latter against allowing any change in her course; and whether the distance between the vertical lights was the usual distance or not, they were sufficient to indicate a tow; while the tow itself, and its lights, were also easily distinguishable, had any proper lookout been kept. The absence of a separate lookout on the tug, is plainly immaterial, since the schooner was seen in time, and her movements evidently perfectly observed by the pilot at the wheel of the Pratt. The collision really occurred, as I find, through a heedless change in the schooner's course, without paying attention to the tow during preparations for anchoring. The Pratt, incumbered with such a tow, did all she was called on to do to avoid the collision, which would not have occurred but for the schooner's above named faults.

The libels should be sustained as to the Keene, and dismissed as to the Pratt, with costs.